CASE 36—PETITION FOR MANDAMUS—JUNE 25.

3b 597
88 506
3bu 597
120 448

# Police Commissioners vs. City of Louisville.

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

1. The act of February 24, 1868, providing for the organization of a police force for the city of Louisville and county of Jefferson (*Session Acts*, 1867–8, *vol.* 1, *p.* 633), is constitutional (*The People vs. Draper*, 15 *N. Y. Rep.*, 548), and the Police Commissioners, elected under said act, are legally entitled to the use of the station-houses and other police paraphernalia in said city.

2. "Election"—this term, in its constitutional sense and meaning, is used to designate a *selection*, by the popular voice of a district, county, town, or city, *or by some organized body*, in contradistinction to the appointment by some single person or officer. (*Speed & Worthington vs. Crawford*, 3 *Met.*, 207.)

3. To make an election by an organized body legal, its own existence, as well as power to make the election, must be legal.

4. When the officer, whose election is prescribed by law, is not strictly a town or city officer, section 6 of article 6 of the State Constitution has no application thereto; nor is the residence within the town or city limits essential for any save strictly town or city officers, under section 11, article 8, of the Constitution.

5. The source of the salary, or those from whom it is derived, in no way designates the character of the officer. Were it, however, demonstrated (which is not admitted) that the means of raising the salary of these policemen were in conflict with the Constitution, that would not deprive them of their office or official power.

6. The Police Commissioners, elected under the provisions of the act of February 24, 1868, providing for the organization of a police force for the city of Louisville and county of Jefferson, are invested with a dual character and powers of city and county functionaries, and, against the legislative creation of such officers, there is no inhibition in the Constitution, nor provision directing the manner of their creation, appointment, or election.

7. The tax to pay the salary of the Police Commissioners of the city of Louisville and county of Jefferson does not cease to be a tax and become a legislative spoliation because derived alone from city property, because the city is the great beneficiary of their services.

Police Commissioners vs. City of Louisville.

I. & J. Caldwell,
Barret & Roberts,
W. R. Thompson, and
Barnett & Edwards,                          For Appellants,
                    CITED—

    *Act of Feb.* 24, 1868, *providing for election of Police Commissioners, &c.*

    *Constitution of Ky., secs.* 6 *and* 10 *of art.* 6; *sec.* 3 *of art.* 5; *sec.* 38 *of art.* 4; *art.* 3, *sec.* 25.

    3 *Met.,* 208; *Speed & Worthington vs. Crawford.*

    *Session Acts,* 1859–60, *page* 510.

    13 *B. M.,* 22; *Slack, &c., vs. Maysville and Lexington Railroad Company.*

    1 *Duvall,* 295; *Louisville vs. Commonwealth.*

    15 *Maryland,* 464; *Mayor of Baltimore, &c., vs. The Board of Police.*

J. F. Bullitt,
W. T. Ward,
H. Marshall, and
E. S. Worthington,                          For Appellee,
                    CITED—

    *Constitution of Ky., sec.* 6 *of art.* 6; *secs.* 9 *and* 41 *of art.* 4; *sec.* 11 *of art.* 8; *sec.* 14 *of art.* 13.

    *Charter of Louisville of* 1851, *and Act of* 1861.

    9 *Dana,* 516; *Lexington vs. McQuillan's heirs.*

    3 *Met.,* 213; *Speed & Worthington vs. Crawford.*

    2 *Met.,* 576; *Trustees of Owensboro vs. Webb.*

    *MSS. Opn., June term,* 1855; *Barbee vs. Speed.*

    *Bouvier's Law Dic., vol.* 2, *pp.* 645–6.

    *Debates of Con. Convention, pp.* 110, 402, 356, 363, 391–2, 413, 420.

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

By an act of the Legislature, approved February 24, 1868, entitled " An act providing for the organization o f

a Police Force for the city of Louisville and county of Jefferson," it was enacted that "there shall be, and is hereby, established within and *for the city of Louisville and Jefferson county* a *Board of Police,* to be called The Police Commissioners of the city of Louisville and Jefferson county, to consist of three commissioners as herein provided."

It then prescribes the qualifications, term of office, manner of filling vacancies, for what a vacancy shall be declared; and provides for removal from office, the time of election, and how elected—that is, by the qualified voters of the city and county.

And it is declared in section 6, that "the duties of the Board of Police hereby created shall be as follows: They shall, at all times of the day and night, within said *city and county,* as well on water as on land, preserve the public peace, prevent crime, and arrest offenders, protect the rights of persons and property, guard the public health, preserve order at every public election, at all public meetings and places, and on public occasions, * * in the city of *Louisville and county of Jefferson,*" &c.

And the next section, among other things, provides, that, "to enable the said board to perform the duties imposed on them, they are hereby authorized and required to *elect,* enroll, and employ a permanent police force *for the city of Louisville and the county of Jefferson.* * * * The number of policemen to be so elected and employed, exclusive of officers, shall, at the first organization, be not exceeding seventy, with power, however, to reduce that number, or to increase it not more than twenty, as experience may warrant."

By the next section, it is provided, that "the officers of the *police of said city* shall be as follows: One superntendent of police; one clerk of police," &c.

And by the following section it is provided, that "the Commissioners aforesaid, and officers of police, and policemen *belonging to the police force of said city,* shall be paid by the said city," &c.

And by section 20, it is enacted, that "the police force and number of policemen to *be employed in said Jefferson county, outside of the city of Louisville,* may be fixed and determined by the county court of Jefferson county, at such times as the court may determine; and when so determined by said court, the police, authorized and employed under the authority of said court, shall be, in all respects, placed under the direction, management, and control of said board;" and when so designated by the court, it is made its duty to place the necessary funds at the disposal of said board to defray its expenses. It will readily be observed that there are two classes of policemen provided for by this enactment. By section 7, a class for the *city* and *county* is provided to be paid by the city. By section 20, a class for the *county, outside of the city,* is provided for to be paid by the county.

But the creation, duties, and responsibilities of the first class in nowise depend on the creation, duties, or responsibilities of the second; indeed, the latter may never be necessary, the first being policemen for both city and county, and, as well so, whether or not the latter be at all organized; indeed, it would be difficult to adjudge that this law has not left to the discretion of the county court to determine the necessity of this second class of policemen, and whether they shall at all be organized.

By section 2, so much of the existing city charter and ordinances as authorized the mayor and council to elect the police are repealed. And by section 12, the mayor and council and other city officers in charge thereof are

directed to allow " the said board to have the use of the station-houses and equipments, accoutrements, and other accommodations and things heretofore provided by said city for the use and service of the police ;" and it provides, that, in case of refusal, said " board may apply to the Jefferson court of common pleas, in the name of said board, for a *mandamus*, or any other necessary writ or proceeding, to compel a compliance with the provisions of this section."

The mayor, denying the validity of this statute, would not comply, though the said commissioners had been elected and qualified according to its provisions, and had organized a police force for the city and county as required by section 7; hence, this agreed case was submitteed to the common pleas court to settle two specified questions—

" 1. Whether or not said act of Assembly is constitutional.

" 2. If it is constitutional, whether or not the plaintiffs have power to organize and establish a police force in and for said city, without also establishing a special police for Jefferson county, under the provisions of said act."

The common pleas court having held said act unconstitutional, this appeal seeks a reversal of that judgment.

The counsel of appellees insist, and the lower court so held, that these policemen, if not the commissioners, were city officers, and could not be elected by said commissioners; that if said commissioners were city officers, their election by the qualified voters of the entire county was invalid; and if not city officers, then they could not elect the city police.

The invalidity of this enactment is mainly predicated upon section 6, article 6, of the State Constitution, as

follows : " Officers of towns and cities *shall be elected for such terms, and in such manner, and with such qualifications, as may be prescribed by law.*" And section 11, article 8, which provides, that " all civil officers for the Commonwealth at large shall reside within the State ; all district, county, or *town* officers within their respective districts, counties, or *towns,* trustees of towns excepted," &c.

It is now a well-settled and universally recognized American doctrine, that the State Legislature represents the sovereignty of the people of the State in all things not delegated to the Federal Government nor prohibited by the United States Constitution to the States, nor inhibited by the State Constitution.

There is no clause of the Federal Constitution invoked to establish the invalidity of this statute ; it therefore stands alone on the inhibitions of the State Constitution.

As said by this court in *Speed & Worthington vs. Crawford* (3 *Met.*, 207), the term "*election,*" in its constitutional sense and meaning, is used to designate a selection by the popular voice of a district, county, town, or city, or by some organized body, in contradistinction to the appointment by some single person or officer ; and this definition has been recognized in subsequent cases.

Of course, to make an election by an organized body legal, its own existence, as well as power to make the election, must be legal.

Then, waiving all criticism as to whether the term "*manner,*" as used in section 6, article 6, of the State Constitution, authorizes the election by such authority or means as the law may prescribe, or means only that the mode of a popular election shall be prescribed, yet it undoubtedly applies alone to town or city officers; and when the officer whose election is prescribed by law is not strictly a town or city officer, this section has no

application thereto; nor is the residence within the town or city limits essential for any, save strictly town or city officers, under section 11, article 8, Constitution; therefore, the controlling inquiry is, whether these commissioners and policemen are really and strictly city officers only.

But it is said they are so designated, *eo nomine*, in sections 8 and 9 of said statute, because it is there said, "*the officers of the police of said city shall be as follows.*" This reference, however, was only by way of designation to specify the body for which said officers therein created were being made, after which follows the number, how elected, and duties of said officers, and their compensation, and was only an imperfect description of this body of police, as provided for in section 7. Had the words "and county" been added after the word "city," or had the reference been to "the officers of said police," the description of the police designated in section 7 would have been more accurate, but the meaning would have been no more certain; it must, therefore, be construed, to all intents and purposes, as having the same signification. This imperfect or inaccurate description can by no means take from those policemen either their jurisdiction or character.

But it is also said, that as the salaries are to be wholly paid by the city, that this is an *indicium* that they are mere city officers. This, however, cannot be a true constitutional test; for the clerks of all our inferior courts, sheriffs, jailers, county judges, county attorneys, and surveyors, are county officers, yet these get their compensation, not from the public of their respective counties, but mostly from the individual litigants, or those employing them, in the shape of fees, whilst some get their pay partly from the treasury of the county, and

partly from the litigants, and the jailers partly from State, county, and individuals.

Circuit court and common pleas judges and chancellors are paid from the public treasury, whilst the Commonwealth's Attorneys, in their several districts, are paid mainly by the litigants, with a small salary from the State. These instances are given by way of elucidating that the source of the salary, or those from whom it is derived, in nowise designates the character of the officer. Were it, however, demonstrated that the means of raising the salary of these policemen were in conflict with the Constitution, that would not deprive them of their office or official power. This might be very inconvenient to them; still, it is apprehended they could go on to discharge their duties, depending on subseqnent legislation for their remuneration. But it is not intended to intimate that this means of raising their salary is constitutionally invalid. The city being a component part of the county, and but a subordinate division of and corporation within it, these policemen, as well as commissioners, having jurisdiction commensurate with the entire limits of the county, and much more extended than they could have as mere city officers, it would be much more appropriate to designate them county instead of city officers; and especially should the judiciary so regard them as a matter of comity, if this could be done with equal propriety, as then the law of their creation would be clearly authorized by section 10, article 6, State Constitution, which declares that "the General Assembly may provide for the *election* or *appointment*, for a term not exceeding four years, of such other county or district or ministerial officers as shall, from time to time, be necessary. But these officers are invested with the dual character and powers of *city* and

*county* functionaries; and, against a legislative creation of such, we find no inhibition in the Constitution, nor provision directing the manner of their creation, appointment, or election. This may be a defect in the Constitution, but the people are the only power that can limit their own sovereignty, by restrictive provisions in the organic law; and it is not for the judiciary to furnish these, but their duty is to expound what they find written therein; and as the Legislature is the representative and embodiment of the sovereignty of the people, the judiciary can only say their enactments are invalid when in conflict with some express or implied prohibition upon the exercise of these sovereign powers, found in the Constitution.

By section 2, article 10, of the New York Constitution, all county, city, town, and village officers, "whose election or appointment is not provided for by this Constitution, *shall be elected by the electors* of such counties, cities, towns, and villages, or some division thereof, *or appointed by such authorities thereof as the Legislature shall designate for that purpose.* All other officers, whose election or appointment is not provided for by this Constitution, and all *officers* whose *offices* may be hereafter created by law, shall be elected by the people, or appointed, as the Legislature may direct."

The Legislature of New York, having established a Metropolitan Police District, embracing several counties and cities, including the city of New York, providing for its government, and *giving the appointment of the officers to the Governor*, it was insisted that the statute was invalid, because the election of the police officers should have been by the people of the district, or by the local authorities of the counties; but the appellate court of New York, in *The People vs. Draper* (15 *N. Y. R.*, 548), held

"that *these officers are neither county, town, city, or village officers, but paramount, in respect to territorial limits and jurisdiction and duties, to any of them.*"

So, in this case under consideration, these officers are neither city or county officers, but paramount, in respect to territorial limits, jurisdiction, and duties, to either, for they are both city and county officers.

The New York Constitution is fully as much, or more, restrictive than ours, for it provides that all county, city, town, or village officers shall be elected by the people or local authorities thereof, whether created by the Constitution or by law.

We need scarcely say, that the almost, if not universal practice, in all cities and towns of this State, to elect a large class of inferior officers by some other authority than the people, has been so long uncomplainingly acquiesced in, and recognized in so many various ways by legislative enactment and judicial construction, as to permanently fix it as a constitutional mode.

Nor is this the taking of private property for public use in any constitutional sense. As to the station-houses, &c., of the city, it is their continued use, for the very purposes of the same people and corporation, for which they were designed; the persons who use them may be appointed in a different way, still the use and purposes are the same.

The tax to pay the salary of these officers does not cease to be a tax, and become a legislative spoliation, because derived alone from city property; because the city is the great beneficiary of their services, with her dense, numerous, fluctuating, and ever-changing, transient, population; the resort of criminals, outlaws, and offenders; with her facilities of flight and secrecy, requiring an ever vigilant police, by night and day, as

conservators of the peace, to protect the property, person, liberty, and life of the citizen.

We regard this statute as the legitimate legislative exercise of the sovereignty of the people, not in conflict with any provision or prohibition of the Constitution, and therefore valid

As we have already expressed the character of these policemen, and shown that their legal organization and the discharge of their duties do not depend upon the organization of the special police for Jefferson county outside the city limits, it follows that the mayor cannot legally refuse to permit said police force to use the station-houses and other police paraphernalia.

As this was an agreed case, to try two specified questions, we have given no consideration to any irregularities as to what should have been the style of the plaintiffs in the motion, nor other irrelevant issues, but have addressed ourselves to the two agreed questions.

For the reasons herein assigned, the judgment of the court below must be reversed, with directions to let the *mandamus* go, and for further proceedings consistent herewith.