JUDGE LINDSAY
delivered tee opinion op the court.
By the provisions of “An act to incorporate the city of Paducah,” approved March 10, 1856, the treasurer was to be elected by the qualified voters of the city. The third section of an act to amend this charter, approved March 10, 1869, directs that “the council shall at such times as may be fixed by ordinance elect one person as treasurer, . . . and the council shall by ordinance fix his compensation and term of office, and prescribe his duties and the manner of discharging them.”
. Without first fixing the time, the council held an election on the 23d of May, 1870, and elected F. M. Cully treasurer for the year beginning on the 1st day of June following. Said Cully was then city treasurer, holding office under an election by the qualified voters. On the 6th day of June he settled his accounts up to and including the 31st of May; his settlement developed the fact that he held (or ought to have held) for the city the sum of $9,654.41. In satisfaction of the amount thus shown to be due from him to the city he delivered to the proper committee a check drawn on the First National Bank of Paducah for $910.04, and also one drawn on the Commercial Bank for $8,751.44. These checks were each certified to be good, the former by the cashier and the latter by the president of the bank upon which it was drawn. On the 8th of June he qualified as treasurer under the election *326 by the council, and executed bond, with the appellees Hobbs, Case, Jones, and Ray as his sureties, whereupon these checks were returned to his custody. In October, 1870, it was ascertained that he was a defaulter in about the sum of eight thousand five hundred dollars, and this suit was instituted by the city against him and his sureties to recover the amount of his defalcation.
The sureties defended, insisting that the election of a city officer in any manner other than by the qualified voters of the city is unconstitutional and void; that in any event the election of Cully by the council was unauthorized, because the time of election had not been fixed, and the term of office and the duties to be performed by the treasurer prescribed by ordinance, as required by the act of March 3, 1869;. that the checks delivered to the council by Cully, and returned to him after the execution of the bond sued on, did not in fact represent the amounts for which they were drawn; that in point of fact he had in the Commercial Bank to his credit no more than $1,779.51, while his check was drawn on that bank, as before stated, for $8,751.44.
A trial resulted in a general verdict for the city for $461.12. Considering, however, the special findings of the jury, the court held appellees responsible for the amounts actually on deposit in the two banks at the time the checks were returned to Cully, and also for such balance as he had in his hands of moneys received between the 31st of May and the 8th day of June, and entered judgment for $1,537.36. From this judgment the city appeals, and Cully’s sureties prosecute a cross-appeal.
The treasurer of the city of Paducah is the mere custodian of the moneys, bonds, bills, etc., of the city, having no powers except to receive, hold, and pay out as directed by the council. Such an officer can be selected in the mode pi’escribed by the act of March 3, 1869, without violating the constitutional *327 provisions requiring officers for cities and towns to be elected. It was certainly irregular to hold the election without first fixing the day by ordinance; but inasmuch as Cully accepted the office under the election as held, and his sureties by the. execution of the bond enabled him to repossess himself of the funds of the city, they ought not now be heard to say that the election was unauthorized, and that the recital in their covenant that their principal “ F. M. Cully was on the 23d day of May, 1869, elected treasurer,” is false. The council seems to have acted in good faith. Cully and his sureties recognized the election as valid, and acted in the execution of the bond to the city upon that assumption.
The mutual mistake of the council and these appellees ought not in a case like this to prejudice the city. Its business affairs, as a matter of necessity, must be committed to such agents .as the law authorizes the people to select. The taxpayers can not act directly, and as the loss resulting from Cully’s defalcation must fall upon them in case his sureties escape, it would be gross injustice to exempt them from liability because their principal, though claiming to be treasurer, and allowed to act as such by reason of their voluntary undertaking that he would well and truly discharge the duties of the office to which he asserted title, had not been regularly and legally elected. They were as directly instrumental in placing him in the position to receive and control the moneys of the city as was the council when it attempted to elect him, or when it accepted and approved his bond, and returned to him the two bank-checks with which he had settled his accounts up to the 1st of June.
The city insists that the court below erred in refusing to hold appellees liable for the full amount of the check on the Commercial Bank. This check has never been paid. It was returned by Cully to the president who had certified it to be good, and by him destroyed. It was never entered upon the *328 books of the bank. Whether the city could have compelled the bank to • pay a greater amount on this check than the $1,779.51 which Cully had on deposit is a question by no means free from difficulty. If the president had authority to certify the check, the bank can possibly be compelled to pay the full amount of it to the city, it being an innocent holder for value. This question, however, need not now be decided. If the action of the president in certifying the check to be good rendered the bank liable to pay the city, in whose favor it was drawn, the full amount it represented, then the bank was debtor to the city on the 8th day of June, 1870, in the sum of $8,751.44. The delivery of the check to Cully after he had executed this bond did not transfer this liability to him. He held the check for the city, and while he had the right to withdraw the money from the bank, yet until he did so, or at least until he in some way converted the check to his own use, the relation (between the city and the bank) of creditor and debtor continued to exist.
This check has never been paid by the bank to the city, to Cully, nor to any one, nor has it ever been surrendered to the bank. Its destruction by the president can not prejudice the city, nor discharge the bank from its obligation to pay the amount for which it was drawn. If the debt ever existed, it still exists, and the city must look to its debtor for the unpaid balance of the check, and not to these appellees. Although their principal violated his duty as treasurer in surrendering the check to the bank president instead of preserving it as he should have done, they can be required to make good no more than the actual loss resulting to the city from this breach of duty. The surrender of the check does not involve the loss of the debt, but merely of the paper by which its existence was evidenced.
The court below properly refused to hold appellees liable for any greater amount on account of the two bank-checks *329 than, was afterward withdrawn from the banks by Cully. Perceiving no error in the judgment prejudicial either to appellant or to the appellees, it is affirmed on both the original and cross-appeals.