THE STATE OF KANSAS, *on the relation of J. H. Atwood, County Attorney*, v. J. H. HUNTER.

1. POLICE ACT, *Valid*. The metropolitan police act, (ch. 100, Laws of 1887,) which provides that the executive council shall appoint a board of police commissioners, is not for that reason invalid, nor does it contravene the constitution by delegating legislative power to the executive council.

2. ———— *Not a Special Act*. Neither is the act for that reason obnoxious to the constitutional limitation forbidding special legislation.

3. EXECUTIVE COUNCIL—*Duty to Appoint*. Under ₴1 of the act, the executive council is required to appoint a board of police commissioners for any city of the first class in the state whenever two hundred *bona fide* householders of such city, having the qualifications of electors, petition therefor.

*Original Proceedings in Quo Warranto.*

THIS is an original action in the nature of *quo warranto*, brought in the name of the state, by the county attorney of Leavenworth county, to remove *J. H. Hunter* from the office of police judge of the city of Leavenworth. The petition alleges that Leavenworth is a city of the first class, and that on or about the first day of April, 1887, J. H. Hunter unlawfully usurped and intruded himself into the office of police judge of that city, and ever since that time has unlawfully held and exercised the duties of the office without any legal or constitutional right so to do; and it closes with a prayer that he be ousted therefrom. The defendant filed the following answer (court and title omitted):

"The defendant J. H. Hunter, for his answer to the petition herein, says that he admits that J. H. Atwood is the county attorney of said county of Leavenworth; that the city of Leavenworth is a city of the first class as alleged in said petition; and that the office of police judge of said city was an office existing by virtue of general laws of the state of Kansas applicable to cities of the first class.

"Defendant further avers that, in pursuance of an act of the legislature of the state of Kansas, entitled 'An act pro-

viding for the police government of cities of the first class through a board of police commissioners appointed by the executive council, also for a similar government for cities of the second class in certain contingencies,' approved March 1, 1887, the executive council of this state duly appointed a board of police commissioners for the city of Leavenworth, consisting of three members, who thereupon qualified, and are still such commissioners; that said appointment was made in pursuance of a petition of two hundred *bona fide* householders of said city having the qualifications of electors, duly presented to said executive council, praying for the appointment of such police commissioners, which said petition duly represented to said executive council that the laws of the state of Kansas against the illegal sale of intoxicating liquors were not being enforced in said city of Leavenworth, and that the then police force of the said city of Leavenworth was making no effort to enforce said laws, which said representation was in fact true; that on the 11th day of March, 1887, said board of police commissioners duly appointed the defendant police judge of said city, as will more fully appear by the commission issued to him, a copy of which is attached hereto as part hereof; that the defendant thereupon duly qualified as police judge under such appointment, and gave bond, which was approved by the mayor and council of said city; that the office and the records thereof were thereupon duly surrendered to defendant by James P. Stinson, who was at that time the police judge by virtue of an election in pursuance of the laws relating to cities of the first class, said laws being more commonly designated as the charter of such cities; that thereupon the defendant assumed the duties of his said office, and has ever since exercised the same, and that there is no other person who claims or assumes to be entitled to the powers of said office.

"And said defendant further avers that he holds said office of police judge only as above stated, and avers that he is lawfully entitled thereto, and denies that he usurped or intruded into the same.

" Wherefore, he prays judgment that he go hence without day, and have and recover his costs herein."

To this answer the plaintiff filed a demurrer upon the ground that said answer did not constitute facts sufficient to constitute a defense, and which alleged that chapter 100, Laws of 1887, under which the defendant justifies, is unconstitutional and

void.   This demurrer the court overruled, at its session in February, 1888, and then filed the opinion, *infra*.

*J. H. Atwood*, county attorney, for The State; *Lucien Baker*, and *Thomas P. Fenlon*, of counsel.

*S. B. Bradford*, attorney general, *Wm. Dill*, and *William C. Hook*, for defendant.

The opinion of the court was delivered by

JOHNSTON, J.: By this proceeding the plaintiff challenges the right of J. H. Hunter to hold the office of police judge in the city of Leavenworth, and to perform its duties.   The obvious purpose of the action, however, is to obtain a determination of the constitutionality of the statutory enactment entitled "An act providing for the police government of cities of the first class, through a board of police commissioners appointed by the executive council, and also for a similar government for cities of the second class in certain contingencies," approved March 1, 1887.   The act provides that the executive council shall, upon the petition of two hundred *bona fide* householders, or when the council shall deem it advisable for the better government of such cities, appoint a board of police commissioners.   It also provides that the police commissioners so chosen shall immediately appoint a police judge, a marshal, a chief of police and other police officers; and it vests the board with the entire control of the police force of the city, its organization, government, and discipline, as well as the property of the city belonging to the police department. (Laws of 1887, ch. 100.)   A petition signed by two hundred *bona fide* householders of the city of Leavenworth was presented to the executive council, representing that the laws of the state of Kansas against the illegal sale of intoxicating liquors were not enforced in that city, and that the then police force was making no effort to enforce the laws, and asking for the appointment of police commissioners.   The executive council granted the petition, and duly appointed a board of police commissioners, which board immediately qualified and appointed the

defendant as police judge.   The right of the defendant to the office rests solely upon this appointment and the validity of the law under which it was made.   It is asserted that the statute is repugnant to the constitution, and invalid, for several reasons.

The point has been made, though not much contended for, that police government by commission is illegal.   In effect, it is said to be opposed to the fundamental theory of self-government, and denies to the people of the district the right to select their own officers from among their own number.   Whatever may be said regarding the policy of placing the police administration of cities in a board of police commissioners who are chosen by state officers rather than through the electors of the cities, there can be no doubt that the legislature has the power to do so.   The constitution imposes no limitations upon the legislature in respect to the agencies through which the police power of the state shall be exercised.   It may be conferred upon the officers of local municipalities chosen by the people resident therein, or, if deemed expedient, it may be vested in officers or persons otherwise selected.   Cities are but agencies of the state, created to aid in the conduct of public affairs. The functions of cities and their officers are prescribed by the legislature, and it rests in the sovereign discretion of that body to say how much of the police power shall be exerted by the municipality.   Although such power is usually exercised by the local authorities, police administration is not in its nature exclusively local.   The people of the whole state are interested in preserving peace and good order and preventing crime in every city and district of the state, and in protecting the property, health and lives of all its citizens.   With reference to the duty of the state in this regard, it has been well said that —

"No duty is more general and all-pervading than this.   It extends alike to towns and cities as to the country.   It looks to the preservation of order and security in the state, at elections, and at all public places; the protection of citizens, strangers, travelers at railway stations, at steamboat landings; the enforcement of the laws against intemperance, gambling, lotteries, violations of the Sabbath, and, in fine, the suppression

of all those disorders which affect the peace and dignity of the state and the security of the citizen. The instrumentalities by which these objects are effected, however appointed, by whatever name called, are agencies of the state, and not of the municipalities for which they are appointed or elected." (*Burch v. Hardwicke,* 30 Gratt. 38.)

A clear and well-recognized distinction exists between these matters which concern the state at large, and those which are of a purely local and corporate character. In pointing out this distinction, Judge Dillon says that—

"The administration of justice, the preservation of the public peace, and the like, although confided to local agencies, are essentially matters of public concern; while the enforcement of municipal by-laws proper, the establishment of gas works, of water works, the construction of sewers, and the like, are matters which pertain to the municipality as distinguished from the state at large." (1 Dill. Mun. Corp. 58.)

The authorities which draw its distinction are numerous and uniform, only a few of which need be cited : *People v. Hurlbut,* 24 Mich. 81; *People v. Draper,* 15 N. Y. 532; *People v. Detroit,* 28 Mich. 228; *Chicago v. Wright,* 69 Ill. 326; *Britton v. Steber,* 62 Mo. 370; *Cobb v. City of Portland,* 55 Me. 381; *Buttrick v. City of Lowell,* 1 Allen, 172; *People v. Lynch,* 51 Cal. 15.

The statute we are examining provides that the police commissioners shall be householders and electors of the city for which they are appointed, and shall have been for "at least three years next prior to their appointment, and one of whom shall be of opposite politics from the other two." So that the police government of the city is localized, and placed in the control of its own people and of those who are substantially interested in its welfare. It is true, the appointment of the police commissioners is made by the executive council, a body composed of state officers. These officers, however, are elected by the state at large, including the people of the cities who come within the operation of this statute; and in making the appointments of police commissioners, such officers act as the agents of the people of these cities, as they do for

the whole people of the state. We have seen, however, that the police is a matter of state instead of local concern, and while the power may be intrusted to local municipal agencies and officers, it is nevertheless a matter of state policy and subject to immediate state control. Acting upon this principle, the legislatures of several states have enacted laws somewhat similar to ours, and the police control of many of the large cities of the country is confided to boards of police commissioners, whose powers come directly from the state. Some of these laws have been assailed on the ground that they were inconsistent with the theory of self-government, and for other reasons; but they have generally been upheld, as ours must be, so far as that objection is concerned. (*People v. Draper*, 15 N. Y. 532; *People v. Mahaney*, 13 Mich. 481; *Baltimore v. Board of Police*, 15 Md. 376; *Police Comm'rs v. City of Louisville*, 3 Bush, 597; *The People v. Draper*, 25 Barb. 344; *Diamond v. Cain*, 21 La. An. 309; *Burch v. Hardwicke*, 30 Gratt. 24.)

It is further contended that the statute is unconstitutional because it delegates legislative power to the executive council. It is argued that as the law does not go into operation in any city until the executive council acts by making appointments of police commissioners, and its operation may afterward be suspended by the council, the legislature has abdicated its functions, and has attempted to confer on the executive council law-making power, possessed only by the legislature. The constitution confers the law-making power upon the house of representatives and the senate, and the power thus vested cannot be surrendered to any other body or person, except as to local administrative legislation, which all agree may be delegated to corporations and tribunals transacting the county business. The act in question, however, does not, in our opinion, confer any legislative power on the executive council. It came from the legislature, formal and finished. The executive council is not authorized and cannot add to or take from the act a single provision or word. The expediency of the law, the classes of cities which may be brought within its

provisions, the contingency upon which its operation depends, have all been determined and expressed by the legislature. The action of the executive council, taken upon the petition of the householders, is the contingency upon which the operation of the law depends. When this contingency arises, the law, positive and detailed in its provisions, takes effect. It provides in mandatory form the powers and duties to be exercised and performed by the police commissioners, the length of term which they shall serve, and the salary which they shall receive. It prescribes the subordinate police officers to be appointed by the board, and the control and supervision to be exercised over them. It directs when the sessions of the board shall be held, vests them with the entire control and government of the police officers and of the property connected with the police department, and authorizes them to audit all claims against that department and certify them to the mayor and council for payment. It then provides that the mayor and council shall provide, at the expense of the city, all necessary accommodations for the sessions of the board, and provide a police court room, station houses and prisons; and it provides for the monthly payment of the police officers upon the certificate of the board, and also for such office expenses, record-books, stationery, telegraphing, badges, clubs, and the repair and cleaning of police buildings, as may be necessary. It further provides that neither the mayor nor the council, nor any officer appointed by them, shall have any government of the police officers; and that any one who interrupts or interferes with the board, or any of the officers appointed by them, while in the performance of their duty, shall be guilty of a misdemeanor and subject to punishment. It provides that the officers to be appointed shall be qualified electors of the city; and limits within which salaries may be allowed to these officers by the board are prescribed. Provision is made that the fines and forfeitures collected by the police judge for violations of the laws of the state shall be paid into the county treasury, and that fines and forfeitures collected for violations of the city ordinances shall be paid

into the city treasury.   The condition on which the law is to go into operation in a city of the second class is then prescribed, which is a judgment of ouster in a *quo warranto* proceeding, brought by the state against the mayor and council of a city of the second class, based upon a finding of the court that the city has by means of licenses pretended to authorize, or by simulated fines and forfeitures attempted to foster and encourage, the illegal manufacture or sale of intoxicating liquors, or has shielded offenders against the laws of the state relating to the manufacture or sale of intoxicating liquors, or has refused or habitually neglected to require the police officers to perform their duties under such laws.   When the governor receives a certified copy of the judgment, he is required forthwith to call a special session of the executive council, unless it shall be within two days' time of the regular session, and at such special or regular meeting the executive council is required to appoint a board of police commissioners for such city.   It is provided that the police government administered under the act shall supersede all other acts or ordinances of the city so far as they are in conflict or inconsistent with it, and shall continue in force until suspended by the executive council in a manner which is provided for.

We·will not undertake to name all the provisions of the act, but enough have been mentioned to show the character and completeness of the legislation.   In the act it is specifically provided that it shall go into effect and be in force from and after its publication.   It has been passed in constitutional form, approved by the governor, and officially published, and is therefore in effect throughout the state and in all cities that are brought within its operation by the happening of the contingency provided for in the act.   The validity of laws, the operation of which is made to depend upon the occurrence of some future event or contingency, certain or uncertain, cannot well be doubted.   That contingency may be the vote or petition by a certain number of people to be affected by the law, or some expression or act of their representatives or agents, or it may arise upon the act or will of some third person.

Indeed, an infinite variety and number of events or contingencies might be named that the legislature might adopt. Chief Justice Redfield, of the Vermont supreme court, in treating on this subject, said:

"If the operation of a law may fairly be made to depend upon a future contingency, then, in my apprehension, it makes no essential difference what is the nature of the contingency, so it be an equal and a fair one, a moral and legal one, not opposed to sound policy, and so far connected with the object and purpose of the statute as not to be a mere idle and arbitrary one. . . . One may find any number of cases, in the legislation of congress, where statutes have been dependent upon the shifting character of the revenue laws, or the navigation laws, or commercial rules, edicts or restrictions of other countries. In some, perhaps, these laws are made by representative bodies, or, it may be, by the people of these states, and, in other words, by the lords of the treasury, or the boards of trade, or by the proclamation of the sovereign; and in all these cases, no question can be made of the perfect legality of our acts of congress being made dependent upon such contingencies." (*The State v. Parker*, 26 Vt. 365.)

But we need not look outside of our own state to find precedents for conditional legislation. Numerous instances may be found where the operation of our laws is made dependent upon the expressed will of the people, or their representatives, the will or act of third persons, or some other anticipated contingency. An example of such legislation is the night herd-law, (Gen. Stat. 1868, ch. 105, §1, *et seq.,*) which provides that it shall be brought into operation in any one of the townships of the different counties of the state upon an order of the board of county commissioners, to be made whenever a majority of the qualified electors in any township shall petition the board to make such order. The order may require that all persons within the township owning domestic animals of any kind shall keep them confined in the night-time for certain portions of the year. Thus the board of county commissioners is authorized to put in operation a law which in a certain sense supersedes and suspends a general one; and it continues in force until it is modified or set aside by the same board. The

validity of this act was questioned upon the ground that it delegated legislative discretion to the county commissioners, and the same arguments were urged against it as are made against the metropolitan police law. The court overruled the objection, and held the act to be constitutional. (*Noffzigger v. McAllister*, 12 Kas. 315.) A similar law, providing for the regulation of the running at large of animals, was enacted. (Laws of 1872, ch. 193.) It provided that the board of county commissioners might determine and direct by an order what animals should not be allowed to run at large within the bounds of the county. It authorized the allowance of damages to any person injured by the running at large of any of the animals prohibited by the order, and gave a lien on such animals for the damage done. This act is put in operation in any county at the will of the county board, without a vote or even a petition of the people; and yet, when its validity was challenged on the ground that it delegated legislative power to the board, it was sustained. (*Keyes v. Snyder*, 15 Kas. 143.) The same principle is found in the various acts that have been passed authorizing municipalities to issue their bonds in aid of the construction of railroads and in exchange for the stock of the railroad companies. The operation of these acts is conditioned upon a vote of approval by the people, and can have no effect or operation in the municipality until an affirmative vote is had. The validity of these acts has frequently been considered and sustained. (*L. L. & G. Rld. Co. v. Comm'rs of Douglas Co.*, 18 Kas. 184, and cases there cited.) The dramshop act of 1868, which authorized the granting of a license upon the petition of a majority of the male and female residents of the township, city or town, involved the same principle, and was held to be constitutional. The hedge law, (Comp. Laws of 1879, ch. 40, § 36,) and the various acts providing for the location of the seat of county government, are of the same character — that is, their operation depends upon a vote of the people; and they have been sustained. Then there are the acts of the legislature which provide that cities of the third class may be transferred to the second class, and those of the

second class transferred to cities of the first class, upon proclamation of the governor. (Laws of 1881, ch. 37, § 1; Laws of 1872, ch. 100, § 1.) Under this legislation the operation of laws which before that time had governed cities, is suspended by the proclamation of the governor, and such cities thus advanced to a higher class are by the same act made subject to a new code of laws; and yet no one has been bold enough to assert that this legislation was invalid for the reason that it delegated legislative power to the governor. A notable example of such legislation is found in the retaliatory provision of our insurance laws. (Comp. Laws of 1879, ch. 50a, § 17.) It provides that when the laws of any other state impose upon the insurance companies of this state applying to transact business within its limits other and more onerous burdens and conditions than those prescribed by our own statute against foreign insurance companies, the same burdens and conditions shall be imposed upon the insurance companies from that state applying to do business in this; thus making the operation of the law in this state dependent upon the action of the legislature of another state. The constitutionality of this provision was vigorously assailed because it was made to depend upon a contingency and was not therefore a complete expression of the legislative will. (*Phœnix Ins. Co. v. Welch, Supt.*, 29 Kas. 672.) In that case the question before us was carefully considered, and the validity of the act sustained. In pronouncing the judgment, Mr. Justice BREWER remarked that —

"Our laws abound in cases in which a statute is made dependent upon the action of some tribunal or body, or upon some other contingency, and is therefore practically dormant until such action takes place or contingency happens."

And so we might refer to the laws for the establishment of highways, the erection of county buildings, the drainage of swamp or low lands, and many others; but sufficient have been mentioned to show that such legislation is not unusual in this state nor the question before us a new one in this court. The courts of other states have frequently upheld similar

laws, and of this class of legislation perhaps the local-option laws, so called, have been the subject of more discussion and judicial decision than any other.  At first, there was some diversity of opinion regarding the validity of these laws, but it may now be said that there is substantial unanimity among the courts in sustaining these and like legislation. (*Locke's Appeal*, 72 Pa. St. 491; *The State v. Wilcox*, 42 Conn. 364; *Commonwealth v. Bennett*, 108 Mass. 27; *Commonwealth v. Weller*, 14 Bush, 218; *The State v. Noyes*, 10 Foster, 279; *Bancroft v. Dumas*, 21 Vt. 456; *The State v. County of Morris*, 36 N. J. 72; *Caldwell v. Barrett*, 73 Ga. 603; *Fell v. The State*, 42 Md. 71; *Rld. Co. v. Comm'rs of Clinton Co.*, 1 Ohio St. 77; *Bull v. Read*, 13 Gratt. 78.)  The same question has been recently examined by the supreme court of Missouri, and after a thorough and elaborate consideration it determines that a law which goes into operation and is made dependent on a discretionary contingency is not invalid. (*The State v. Pond*, 6 S. W. Rep. 469.)

The action of the executive council is but the contingency upon which the operation of this law depends.  The officers composing the council are to a certain extent chosen by and for the people of the cities for whom they act.  In a certain sense they are their representatives or agents in putting or continuing the law in operation.  They do not enact or give efficacy to the law, but it rather gives power to them and vitality to their acts; and we conclude that it was within the

1. Police act, valid.

power of the legislature to make the operation of the law depend on the contingency of the action of the executive council, and that it is not repugnant to the constitutional objection that legislative power is delegated to the executive council.

It is finally urged that the act is in contravention of the provision of the constitution which requires the enactment of general laws where they can be made applicable, and that they should have uniform operation throughout the state, (art. 2, § 17,) and of those provisions in article 12 of the constitution providing that cities shall be organized by general

laws, and forbidding the passage of any special act conferring corporate powers. The claim is presented with considerable plausibility and force, that the operation of the law rests solely in the discretion of the executive council, and that as it may put the law in operation in one city and not in another, it is special legislation. It will be observed that the law is general in form, and may be made applicable to all cities of the first class and also to those of the second class when a certain condition of things exists. If it be assumed that the operation of the law depends solely upon the discretion of the executive council, it still is not clear that the act falls within what is known as special legislation. It is not necessary that a law should operate upon all cities of the state to be constitutional. If it is general and uniform throughout the state, operating upon all of a certain class, or upon all who are brought within the relations and circumstances provided in 2. Not a special the act, it is not obnoxious to the limitation act. against special legislation. It belongs to the legislature to make the classification, and while it cannot so classify them as to make the law special in its application and results, yet many classes may properly be made. It need not be restricted to the population of the municipality, but it would seem that it might be based on the conduct or condition of the people resident therein. If it may be so made, and the council shall put the act in operation whenever it may be necessary to do so in order to secure good government and an orderly administration of law, can the act be said to be special? It is true, that the form or profession of an act does not control, and although it is general in form and pretense if it necessarily produces a special result it cannot be upheld.

"If, on the other hand, the act has room within its terms to operate upon all of a class of things, present and prospective, and not merely upon one particular thing, or upon a particular class of things existing at the time of its passage, the act is general." (*City of Topeka v. Gillett*, 32 Kas. 436.)

Upon the assumption that the executive council is given absolute discretion to enforce the act, has it not room within

its terms to operate upon all of a class? There is room to apply it to every city of the first class; and is it less general or valid than those acts which go into force in a community upon the discretion or vote of a majority of the electors, or upon the mere will of the board of county commissioners? These laws are held to be valid, and yet the discretion of the voters, the petitioners, or the persons upon whom the operation of these laws depends, is as arbitrary and absolute as that claimed to be conferred upon the executive council by the terms of this law. Are the application and results any more special or wanting in uniformity in this law than in those referred to? We need not, however, determine the question upon this claim or assumption, or decide whether the act would be valid if arbitrary discretion was vested in the executive council. As we interpret the language employed authorizing the executive council to appoint police commissioners, the authority is not wholly discretionary, but it is required to appoint whenever two hundred or more *bona fide* householders of the city having the qualifications of electors petition it to do so. The provision conferring the authority is involved and ambiguous, and requires interpretation. It reads:

"The executive council shall appoint a board of police commissioners, to consist of three members, for each city of the first class in this state, if considered expedient, and upon the presentation of a petition of two hundred *bona fide* householders of such city having the qualifications of electors, or when said executive council shall deem it advisable or necessary for the better or more perfect government of such city."

The difficulty arises from the use of the words, "if considered expedient," preceding those concerning the presentation of the petition. To hold the authority of appointment to be wholly within the discretion of the executive council, is in effect to disregard the language which authorizes the householders and electors to petition the council for the appointment of police commissioners. Not only that, but it discards the subsequent words in the same sentence which provide that the executive council may appoint when it shall deem it advisable or necessary. It would involve an absurd repetition,

and impute to the law-makers the supreme folly of substantially saying that "the executive council shall appoint a board of police commissioners when they deem it expedient, or when said executive council shall deem it expedient, they shall appoint a board of police commissioners." That view not only charges the legislature with foolishness, but it gives no effect to a considerable, and what was manifestly intended to be an important, part of the statute. Statutes are to be construed according to the intent of the legislature, and an important guide by which to ascertain the intention is the language used; but an equally sound rule of construction requires that every part and word of a statute shall if possible be given effect. This statute admits of the interpretation that if the householders and electors deem it expedient, and two hundred or more of them petition for the appointment of police commissioners, it shall be made; or the executive council may appoint on its own motion if it deems it advisable or necessary for the better and more perfect government of the city. This construction is a reasonable one, which gives effect to all the words of the provision, and does not lead to an absurdity, as would the other. We conclude, then, that the council is

3. Executive council—duty to appoint.

required to appoint a board of police commissioners whenever a proper petition is presented; and therefore the most serious objection urged against the act is removed and taken out of the consideration. In the present case, the appointment was made upon the requisite petition, and it will be time enough to determine the validity of the discretionary provisions of the act when the executive council assumes to exercise discretionary power. Even if these provisions are invalid, the main body and remainder of the act is not so mutually connected and dependent on the discretionary provisions as to affect its validity, or to render it inoperative. Subsequent legislation may remedy defects in that respect, if any exist.

In examining and in sustaining the validity of the act, we have kept in mind the well-established rule that whenever a statute can be so construed as to avoid conflict with the con-

stitution, that construction should be given.    In the language of Mr. Justice Washington : "It is but a decent respect due to the wisdom, the integrity and the patriotism of the legislative body by which any law is passed, to presume in favor of its validity, until its violation of the constitution is proved beyond all reasonable doubt." (*Ogden v. Saunders,* 12 Wheat. 213.)

Although we are not free from doubts upon some of the points of invalidity presented, they are not of such a character as would warrant us in striking down and nullifying a formal act of legislation; and therefore the demurrer to the answer must be overruled and judgment go in favor of the defendant.

All the Justices concurring.