### Caperton's Ex'r, et al v. State Bank & Trust Co., Trustee, et al.

(Decided January 24, 1912.)

### Appeal from Madison Circuit Court.

1. Principal and Surety.—Where a surety signs a bond guaranteeing the official good conduct of one who purports to be a public official, he will not be heard to say that his principal was not such official.

2. Same—Release of Surety.—Mere indulgence of the creditor to his debtor will not release a surety. But if the creditor extend to the principal the right to pay at some future definite time, however short, without the consent of the surety, the latter is released.

J. C. & D. M. CHENAULT and BURNAM & BURNAM for appellants.

J. A. SULLIVAN and S. M. WALLACE for appellees.

OPINION OF THE COURT BY JUDGE WINN—Affirming.

When Judge J. M. Benton came in as the presiding judge of the Madison Circuit Court, in January, 1904, he appointed a regular Master Commissioner; and at the same term appointed S.E.Scott as Special Commissioner in something over one hundred cases, in which Scott had already been acting as Commissioner. The order appointing Scott as Special Commissioner begins on page 372 of order book 37, of that court. Following a common practice obtaining in the courts, where an order of like form and intent is to be entered in a number of cases, the order entered styled, one after another, all the cases in which Scott was appointed, and then concluded thus: "It is ordered that S. E. Scott be and is hereby appointed Special Commissioner of this court in the above styled actions, and all orders of reference or directions to the Commissioner in said cases shall be directed to and performed by said Scott." The styling of the cases began on page 372, ran entirely through pages 373 and 374, and concluded on page 375 with the order just quoted. Some thirty-one of the cases appeared on page 372.

Following his appointment, Scott executed bond as Special Commissioner in the following form:

"We, S. E. Scott, Special Commissioner and Receiver of the Madison Circuit Court, Principal and W. B. Smith, J. W. Caperton, J. A. Sullivan, J. C. and D. M. Chenault, sureties, do hereby covenant to and with the Commonwealth of Kentucky that the said S. E. Scott shall correctly and faithfully discharge all the duties of his office as Special Commissioner and Receiver in all the cases in which he has been so appointed aforesaid, and shall properly account for all the money received and pay or deliver the same when, and as ordered by the court, in the cases, as set out on page 372, Order Book 37, which are too numerous to mention herein. Witness our hands this January, 1904.

S. E. SCOTT, Principal,
JOHN C. CHENAULT, Sct.,
D. M. CHENAULT,
J. A. SULLIVAN, security,
J. W. CAPERTON,
W. B. SMITH."

Attest:—Roy C. White, C. M. C. C.

In April, 1911, the appellee, State Bank & Trust Company, filed its petition in the Madison Circuit Court against Scott, the two Chenaults, W. B. Smith, J. A. Sul-

livan and the Executor of J. W. Caperton, who had died after the execution of the bond. The trust company set up in substance that it was trustee of Mary Jane Walker and her children, under the will of Joel J. Walker; that Scott had been appointed Special Commissioner of that court, as above set out; that as such Commissioner he rented out for the year 1905, acting in the case of Joel J. Walker's Exrs. v. Joel J. Walker's Devisees, a farm devised in trust by said Joel J. Walker for the use and benefit of Mary Jane Walker and her children; that upon a report by him there was found to be going to said trust the sum of $524.30; that he was directed and ordered by said court to turn over said money to the plaintiff, as trustee, but that he failed to do so; that from time to time the plaintiff had rules issued against Scott to pay over to it this balance; that Scott induced the plaintiff, by different promises of payment, not to press these rules, down until the February, 1911, term of the court, when he was compelled to answer; that he answered that he did not have the money and could not pay; that he executed the bond above set out with proper allegation as to its approval. The petition concluded with a prayer for judgment against Scott and the sureties on the bond.

To the petition answer was made by the Chenaults, Caperton's Executor and W. B. Smith. The first paragraph was a denial in substance that any of them ever executed any bond for Scott in the Walker case. The second paragraph took the position that by the terms of the bond the sureties only became responsible for Scott's action as Special Commissioner in the cases set out on page 372, of order book 37; and that the Walker case was not set out on that page. The third paragraph alleged that the appointment of Scott as Special Commissioner in the Walker case was void for the reason that one Thorp was then the regular Commissioner, and that he was not interested either as attorney or party in the Walker case (Ky. Statutes, Section 399); that Scott had not been appointed by agreement or consent of the parties to the Walker suit (Ky. Statutes, Section 400); and that no Special Commissioner could be appointed save under the conditions named in these sections of the Statutes. The fourth paragraph set up that the plaintiff had been guilty of laches and gross negligence in prosecuting the claim against Scott without the knowledge or consent

of defendants; that Scott was solvent at the time of the indulgence to him, and that they were· released by the plaintiff's delay. A general demurrer was interposed and sustained to the third and fourth paragraphs of the answer. The case proceeded to preparation and trial by the court upon agreement by the parties that the court should hear and determine the law and facts. Judgment thereupon was rendered in plaintiff's favor against all the defendants in the sum of $524.30 with interest from March 4, 1910. From that judgment the defendants who answered have prosecuted this appeal.

The first argument urged in behalf of appellants is that the Walker case does not appear on page 372 of the order book, and that by the very terms of their obligation the sureties are bound for the good conduct of Scott only in the cases named upon that page. It is urged that sureties are not bound beyond the terms of a strict construction of their undertaking; and that since the bond mentions only the cases named upon page 372 of the order book, their liability could not, by any fair construction of the bond, be extended to include other cases. The proof, as a matter of fact, showed that the Walker case was the fifth from the top of page 374 in the long list of cases above named. This position, in our judgment, is not well taken; for the obligation of the bond is that Scott should correctly and faithfully discharge his duties "in all the cases in which he has been so appointed." The reference to page 372 of the order book is not, in terms, one to convey the intent of the sureties upon the bond to obligate themselves as sureties only in the specific cases named upon that page; but on the contrary its purpose was to indicate the place in that order book where the general order appointing Scott as Special Commissioner might be found. It is a custom well-known in the preparation of legal documents, in making reference to any matter of record, to refer to the beginning page of the specific order, deed, mortgage or the like, which is made the subject of reference. For instance, a deed may be recorded upon some four or five pages of a deed book. If, in the drawing of a subsequent deed or mortgage, it is desired to refer to such deed, it is customary to refer to it as the deed to be found in deed book 37, page 372, for example. As an illustration of this custom attention may be called to the amendment of 1904, to Section 495 of the Ky. Statutes; whereby it

is provided that one granting real estate, shall, in his deed, specify the next immediate prior source of his title, and if it be by deed it shall state the office, book and page where the prior deed in the chain of title is recorded. It can hardly be said that a deed which gave the beginning page but failed to give any after page upon which any part of a preceding deed appeared would not comply with the demand of the statute. Often, it is true, where a document appears upon more than one page, the entire number of pages is set out, but we think this is the exception and not the rule. Only one of the sureties testifies that he ever looked at order book 37, page 372; and he is uncertain in his memory about his inspection of the record. The sureties were all members of the bar. Had they looked at page 372 of the order book they would have found a number of cases appearing there, without any order at the foot of that page following them. They must have known that there could have been no reason, had they looked at the order book, to write upon it a number of cases without any order; and they, beyond question, would have turned the pages until they found the order applicable to the cases. We mean no criticism of the distinguished members of the bar who signed the bond, but only to say that had they looked at the record they would perforce have known that the cases in which Scott was appointed were the cases named in the order appointing him. By the very terms of the bond which they executed they bound themselves for the faithful discharge of his duties "in all the cases in which he has been so appointed."

It is next urged that the court erred in sustaining the demurrer to the second paragraph, wherein was taken the position that Scott's appointment was void because neither the conditions named in Section 399 or 400 of the Statutes, existed to authorize his appointment. The case of the Louisville Public Warehouse Co. v. Miller & Tilford, 26 Ky. L. R., 351, is cited to sustain their position. We do not, however, have this question before us. Litigants and the public at large have been protected by wise provisions of the statutes in the faithful discharge of the duties of public officials. Those of them who have trusts imposed upon them, and the collection and handling of public and private funds, are required to give bond for the faithful conduct of their offices and for the payment over of the moneys handled by them. Litigants

and the public generally know that such officers will not be permitted to discharge the duties incumbent upon them until they have executed bond. When a surety signs such a bond he represents to the people that the official whose bond he signs is the official that the bond recites him to be. The bond in question in this action recites in express terms that the sureties guarantee Scott's fidelity as Special Commissioner in all the cases in which he had been "so appointed." Having recited in the obligation signed by them that he was such Commissioner they will not be heard now to say, when the rights of others have intervened, that he was not such Commissioner. The principle is an old one in Kentucky. Brown v. Grover, 6 Bush, 1; City of Paducah v. Cully, 9 Bush, 323; Jones v. Gallatin County, 78 Ky., 491. It results, therefore, that we need not inquire into the question of whether Scott was Special Commissioner, whether his appointment would be presumed to be valid, or where the burden would rest upon the validity of his appointment; for these are questions which cannot be raised by those who signed his bond.

It is next objected that the delay of the trustee in enforcing collection was negligent and unfair to the sureties; and that, as Scott was solvent at one time after he owed this obligation, the loss should be suffered by those who permitted the time to slip away until his condition had been so altered that, not Scott, but his sureties must pay. Generally, he who holds a debt upon which others than the debtor have obligated themselves as sureties, owes to them an obligation to deal fairly, and strictly to observe every burden which the law places upon him for the protection of the sureties. But we cannot say that a mere indulgence to the principal is unfair to the surety when no other legal rules intervene to demand that there shall be no indulgence. The surety, when once the debt has matured, has the right at any time to pay the debt and to proceed to enforce payment from his principal. So, if by any valid agreement or arrangement, the creditor extends to the principal the right to pay at some future definite time, the surety is released; for he loses his right then to pay and to proceed against his principal. This general principle runs through all the multiform relations of debtor, principal and surety. Here, however, the delay was merely the delay of indulgence. The record does not disclose that the plaintiff, ever, for a single in-

stant, extended Scott's time of payment to some fixed date in the future. The sureties were not, at any time, placed in any different condition from that which they bore the instant their liability arose; for they could, at any time, have paid the debt and proceeded against Scott.

It is also urged that the trustee had not the right to sue without joining the Commonwealth. If this were a defect, it was waived by the failure of the defendants to file a special demurrer to the petition, as is provided in Section 92, Civil Code of Practice.

The conclusions reached render it unnecessary for us to discuss the questions as to the sufficiency of the bill of exceptions, and as to whether the bond in question was good as a common law bond.

For the reasons given the judgment is affirmed.