## Commonwealth v. Baker.

(Decided February 13, 1931.)

J. W. CAMMACK, Attorney General, and H. B. KINSOLVING, JR., for appellant.

Opinion of the Court by Judge Thomas—Certifying the law.

The appellee, Roy Baker, was indicted in the Shelby circuit court for having violated a provision of section 1585 of our present Statutes by voting at each of two separate and distinct precincts in Shelby county at the primary election held therein in 1929. At his trial the jury under the instructions of the court returned a verdict of acquittal, and, complaining of instruction No. 3 given by the court, the commonwealth prosecutes this appeal to obtain a certification of the law. The complained of instruction says: " 'Voting in an election' as used in these instructions means when a citizen enters a voting precinct where an election is being held and receives at the hands of the Clerk of the Election a ballot with the names of the persons to be voted for thereon legally endorsed and retires to the voting booth and stamps with a stencil the ballot and returns the ballot to the judge of the Election which is by him placed in the ballot box in the voter's presence."

The complaint of the commonwealth to that instruction is in the use of these words: "And stamps with a stencil the ballot," since it is argued that because of the great difficulty, if not impossibility, for the commonwealth to prove the actual stamping of the ballot by defendant, to require the finding of such fact would render it practically impossible to enforce the statute which is directed to the wholesome purpose of preserving the purity of elections. It is not argued in brief for the commonwealth that one would be guilty of violating the statute, or of casting a vote, by merely depositing an unstamped ballot in the box, or by procuring an officer of the election to do so, nor is such a position maintainable in view of the legal definition of the word "vote."

> Black's Law Dictionary defines the word "vote" as: "The expression of his will, preference, or choice . . . of a constituency or a body of qualified electors, in regard to the decision to be made by the body as a whole upon any proposed measure or proceeding, or the selection of an officer or representative." And the same author defines a "voter" as: "One who has the right of giving his voice or suffrage."

One of the definitions of the word "vote," given in the text of 40 Cyc. 223, is: "The expression of choice

382

by or through a ballot, or by outcry, or any other means by which the choice of the voter may be lawfully made known or communicated to others in the given instance; the wish of an individual in regard to any question, measure, or choice expressed by word of mouth, by ballot or otherwise; that by which the will, preference, or opinion of a person is expressed." Among the numerous cases cited in the notes supporting that text are Davis v. Brown, 46 W. Va. 716, 34 S. E. 839, 841, and Bourland v. Hildreth, 26 Cal. 161, 194. In the latter case the court said: "The popular vote is but the expression of the popular will, the word means, choice expressed or made known, without involving any particular means which the term itself distinguishes and characterizes. The result may have been reached through a ballot, or by viva voce, or otherwise."

The same definition, in substance, is given by all text-writers on the subject and by all courts speaking thereon, including this one in the cases of Speed v. Crawford, 3 Metc. 207; Police Commissioners v. City of Louisville, 3 Bush, 597, and City of Paducah v. Cully, 9 Bush, 323, in which it was recognized that elections were but parts of governmental machinery to obtain the expression of the popular will of those having a right to participate in the selection of officers or the adoption or rejection of measures by expressing their choice, and, following the idea that a vote is the expression of the will or choice of the voters, the West Virginia Supreme Court in the Davis case, supra, said: "While the terms 'ballot' and 'vote' are sometimes confused, and while they may sometimes be used synonymously, the ballot is, in fact, under our form of voting, the instrument by which the voter expresses his choice between two candidates or two propositions; and his vote is his choice or election between the two, as expressed by his ballot; and when his ballot makes no choice between any two candidates, or on any question, then he casts no vote for either of these candidates or on the question." See, also, 9 R. C. L. pages 976 and 1120, secs. 1 and 122.

Section 147 of our Constitution, according to our view, is confirmatory of the excerpt from the West Virginia court when it says that "all elections by the people shall be by secret official ballot, furnished by public authority to the voters at the polls, and *marked* by each voter in private at the polls, and then and there deposited." (Our emphasis.) According to it the act of vot-

ing is not complete until the official ballot has been *marked* (stamped) by the voter and his ballot "then and there deposited." And it was because those two acts could not be done by absent voters that we held our former absent voters' act unconstitutional in the case of Clark v. Nash, 192 Ky. 594, 234 S. W. 1, 19 A. L. R. 304. No one would contend that an unstamped or blank ballot put into the ballot box could be counted for any candidate or for or against any measure voted upon, for the all-sufficient reason that there was no manifested choice on the part of the depositor of the ballot. One who casts such a blank ballot has done nothing to affect the election, and, if he cast one hundred such unstamped ballots, there would still be no effect produced on the result of the election, and, of course, no contamination thereof. It is, therefore, our conclusion that before one may be prosecuted for repeated voting as many as two of the ballots that he casts should be stamped as the law requires, and that the court did not err in this case in requiring that fact to be found by the jury in connection with the other elements of voting set out in the complained of instruction and with the same certainty of conviction, i. e., beyond a reasonable doubt.

It does not follow however, that, before the jury may believe with the requisite certainty that the ballot was stamped, there should be positive and express proof of the fact. In an unbroken line of opinions of this and other courts it is announced that essential facts to a conviction in a criminal case may be established by circumstances, and, when they are woven together in such convincing fashion as to inspire belief, the testimony is frequently referred to as that of the strongest character. In this case there was no dispute but that the appellee obtained a ballot on the day of the election in question at two distinct precincts in Shelby county, and in each instance took it into the booth and remained there long enough to stamp it and then came out with his ballot folded and handed it to the proper officer of the election, who deposited it in the ballot box in his presence. Such facts furnished grounds for positive conviction that he stamped his ballot while in the booth; otherwise, he would be convicted of loss of time and uselessly going through the form of voting without having done so or intending to do so, and which would be a most unnatural inference wholly at variance with human conduct and experience. It is, therefore, our conclusion that when

the commonwealth proved all of the other acts essential to voting, as set out in the criticized instruction, the jury was amply authorized to infer that defendant stamped his ballot at each of the times he went through the form of voting, and that such inference was glaringly apparent.

However, since there exists no method by which the actual stamping of the ballot in such cases can be proven by the commonwealth, and, since such fact may be inferred from the other proven ones as embodied in the instruction, we conclude that the court should have added thereto these words, or their substance: "But it would be competent for the jury to infer that defendant legally stamped his ballot if they believe beyond a reasonable doubt the other facts set out in this instruction." The instruction, as thus modified, would then read: " 'Voting in an election' as used in these instructions, means when a citizen enters a voting precinct where an election is being held and receives at the hand of the clerk of the election a ballot with the names of the persons to be voted for thereon legally endorsed and retires to the voting booth, and stamps with a stencil the ballot and returns the ballot to the judge of the election, which is by him placed in the ballot box in the voter's presence, but it would be competent for the jury to infer that defendant legally stamped his ballot if they believed beyond a reasonable doubt the other elements of voting set out in this instruction."

Wherefore, this opinion is certified as the law of the case.

Whole court sitting.