## Morgan, et al. v. Goode, et al.

## Hogue v. Myrick, County Court Clerk.

(Decided December 18, 1912.)

On Motion from McCreary Circuit Court to Reinstate Injunction.

1.  Judgment—Setting Up in Bar of Subsequent Action.—A judgment cannot be set up in bar of a subsequent action, unless it was a final judgment on the merits adjudicating the rights in litigation in a conclusive and definite manner.

2.  Elections—Selecting County Seat By Vote of People of County—When Can Be Held.—The selection of a county seat by a vote of the people of the county is an election under section 148 of the Constitution, and can be held only at the regular November election.

3. Elections—Selection of County Seat—When Election Contrary to Law.—An election by the people of a county held in September, to locate a county seat, was held contrary to section 148 of the Constitution, and is void.

4. Constitutional Law—State Legislature—Has Jurisdiction When Not Prohibited.—It is a well settled rule of constitutional construction that Congress can pass no law but such as the Constitution authorizes, either expressly or by clear implication; while the State Legislature has jurisdiction of all subjects on which its legislation is not prohibited.

5. Constitutional Law.—There is a broad difference between the Constitution of the United States, and the Constitutions of the States as regards the powers which may be exercised under them. The government of the United States is one of enumerated powers; the governments of the States are possessed of all the general powers of legislation. We look in the Constitution of the United States for grants of legislative power, but in the Constitutions of the State to ascertain if any limitations have been imposed upon the complete power with which the legislative department of the State is vested.

R. L. POPE and L. P. CAMPBELL for plaintiffs.

DENTON & FLIPPIN, O. H. WADDLE & SONS and J. N. SHARP for defendants.

OPINION OF JUDGE MILLER—Reinstating Injunction.

These actions were filed in the McCreary Circuit Court to test the validity of the special election held in that county on September 7, 1912, for the purpose of locating the permanent county seat of McCreary County.

The act of March 12, 1912 (Acts 1912, p. 184), creating McCreary County, fixed the temporary seat of government for the county at Pine Knot, but further provided that the permanent county seat should be determined by a vote of the people of the new county at a special election to be called by the county judge. The special election was regularly called by the county judge for September 7, 1912, and was held on that day, between the rival towns of Pine Knot and Whitley—the last-named town receiving a majority of the votes upon the face of the returns. Subsequently, these actions were brought on October 7 and 15, 1912, respectively, to enjoin the defendants in the first action, as election commissioners, from certifying from the election returns the fact that Whitley had received a majority of the votes on the proposition of locating the county seat, and

also enjoining the defendants in the second action, as county officers, from removing the public records of the county from Pine Knot to Whitley. The circuit court clerk granted the injunctions; but, upon a trial of that question before the circuit judge, the injunctions were dissolved, and the plaintiffs have, pursuant to notice, and the provisions of section 297 of the Civil Code of Practice, applied to me, as a judge of the Court of Appeals, to reinstate the injunctions, pending the preparation and trial of the actions in the circuit court. At my invitation, the western division of the court heard the oral argument, and the whole court has participated in its decision, and six judges thereof approve the conclusion reached in this opinion.

The petitions set forth six grounds for an injunction; (1) that the election held on September 7, 1912, was not held in accordance with section 148 of the Constitution, and is void; (2) that the election was not held as required by section 7 of the act of March 12, 1912, which created McCreary County; (3) that Whitley did not receive a majority of the legal votes cast at the election; (4) that the election was carried by fraud; (5) that the result of the election was procured by the intimidation of voters; and (6) that a contest is pending to try the validity of said election.

However, since the third, fourth, fifth and sixth grounds are in the nature of a contest of the election, which cannot be tried by injunction, they need not be further mentioned. The controlling question of the case is, was the special election held September 7, 1912, in violation of section 148 of the Constitution?

1. It is insisted, at the outset, by the defendants, that the question here presented is *res judicata*. This contention is based upon the ground that the question here involved was necessarily decided in Walker v. Goode, 149 Ky., 691, 149 S. W., 913, which was an action for a mandatory injunction requiring the Board of Election Commissioners for McCreary County to canvass the votes and certify the result of the vote between Pine Knot and Whitley under the election here complained of. In that case the circuit court, by a preliminary injunction, required the board to perform that duty, and upon an application to this court we declined to dissolve or modify the mandatory injunction. The validity of the election was not considered. That case, moreover, is still pending and undertermined in the Mc-

Creary Circuit Court. The ruling of this court was not a final judgment, and so far as the record shows, no final judgment has been entered in the McCreary Circuit Court in that action. The question is still undetermined; and, when the evidence shall have been heard, it may be decided contrary to the views expressed by this court or by the circuit court upon the preliminary hearing. It is elementary that no mere interlocutory judgment is a bar to another action. For all that appears, that action relied upon as a bar may have been dismissed, or may yet be dismissed without a final judgment having ever been entered. There must be a final adjudication by a court of competent jurisdiction to support a plea of *res judicata.*

The rule as to when a judgment will be a bar to further litigation of the same cause of action is stated as follows in 23 Cyc., 1126:

"A judgment cannot be set up in bar of a subsequent action unless it was a final judgment on the merits, adjudicating the rights in litigation in a conclusive and definite manner.

"In order that a judgment should be final within the meaning of the rule just stated it must be such as puts an end to the particular litigation or definitely puts the case out of court; otherwise it is merely interlocutory and constitutes no bar to a subsequent action."

Hibler v. Shipp, 78 Ky., 67, and Nickell v. Fallen, 15 Ky. Law R., 389, 23 S. W., 366, sustain the rule above announced.

2. Section 148 of the Constitution provides, in part, as follows:

"Not more than one election each year shall be held in this State or in any city, town, district or county thereof, except as otherwise provided in this Constitution. All elections of State, county, city, town or district officers shall be held on the first Tuesday after the first Monday in November; but no officer of any city, town, or county, or of any subdivision thereof, except members of municipal legislative boards, shall be elected in the same year in which members of the House of Representatives of the United States are elected."

It would seem that this language of our fundamental charter is too plain, in its meaning, to leave any room for discussion.

Defendants insist, however, that the determination of the location of the county seat of McCreary County

was not an election within the meaning of section 148, *supra,* while plaintiffs with equal earnestness contend that the location of the county seat by the people was an election, and could not be constitutionally held at the special election held on September 7, since that section peremptorily requires that all elections must be held on the first Tuesday after the first Monday in November, unless they are otherwise specially provided for in the Constitution.

It seems clear, therefore, if the selection of a county seat of McCreary County by a vote of the people was an election within the meaning of section 148, *supra,* it was improperly held, and is void.

Section 147 of the Constitution provides, in part, as follows:

"In all elections by persons in a representative capacity, the voting shall be *viva voce* and made a matter of record; but all elections by the people shall be by secret official ballot, furnished by public authority to the voters at the polls, and marked by each voter in private at the polls, and then and there deposited. The word 'elections' in this section includes the decision of questions submitted to the voters, as well as the choice of officers by them."

The question, therefore, recurs; is the selection of a county seat by a vote of the people of the county, an election under section 148, *supra?* With that question determined, the case is decided.

The question as to what constitutes an election under section 148 of the present Constitution has not been decided by the Court of Appeals. Decisions of a somewhat analogous character were rendered under the former Constitution of 1850, and have been cited by way of illustration. Thus, in Marshall v. Donovan, 10 Bush, 681, decided under the Constitution of 1850, and in which the constitutionality of a school tax election was involved, the tax had been levied under an election in which only white qualified voters, and widows and aliens who were taxpayers or had children under a prescribed age, were permitted to vote; and it was insisted that the election was void because it excluded from the franchise negroes and persons otherwise qualified to vote at general elections. In answer to that contention, the court said:

"The ascertainment of the will of the people of a district in relation to a tax proposed to be levied for

any or all the purposes of the act is not an election. It is but the action of the agency selected by the Legislature to determine when and to what extent the conditional statute shall become operative in that particular district.''

In the course of the opinion the court quoted with approval, the following language from Slack v. M. & L. R. R. Co., 13 B. M., 22:

''The law being made known, may be universally observed and obeyed. It may be carried into operation by the executive alone. It may be enforced by the judiciary, or by the co-operation of the judiciary and the executive. These are the regular agencies provided by the Constitution for the execution of the laws. But the Legislature is not restricted to these agencies. It may select or appoint others, as is often done, when the object of the law is to accomplish local or individual purposes. The agencies generally employed for applying the legislative will and the power of the government to purposes merely local have been that of county courts for counties, and the trustees of towns, or the municipal authorities of cities, for towns and cities, which, to the extent of the powers permanently or temporarily vested in them, or whether allowed a discretion or not, do but carry into effect the legislative will and power. But these local agencies are selected and some of them created by the Legislature itself, for the purpose of carrying its powers into all parts of the Commonwealth, or into such parts as require its application for their benefit or coercion; *and the Legislature may select other agencies for particular purposes, having in view, as it must be presumed to have, the nature of the object to be accomplished and the fitness of the agency selected.*''

Again, in Hall v. Marshall, 80 Ky., 552, which grew out of an election under a special act of the Legislature authorizing the voters of Ballard County to remove the county seat from Blandville to Wickliffe, it was held that the Legislature had the power, regardless of the agency employed, to remove the county seat from Blandville to Wickliffe, and to authorize the county court to determine that question; and that there was a marked distinction between elections held under the Constitution of 1850 and elections held under legislative sanction upon mere matters affecting local interests alone. And, in speaking of the decision in Marshall v. Donovan, *supra,* the court said:

"The court held it not to be an election in the sense of the Constitution, but the action of an agency selected by the Legislature to determine when the conditional law should become operative."

Curran v. Taylor, 92 Ky., 540, merely follows the general rule announced in Marshall v. Donovan and in Hall v. Marshall, *supra,* by holding that the term "election," as used in the General Statutes, did not embrace an election to take the sense of the voters on a county subscription or tax in aid of a railroad; but in so deciding, it said:

"The late Constitutional Convention (1891), recognizing what should, perhaps, be regarded as a defect in our statute, declared the word 'elections' should include the decisions of questions submitted to the voters as well as the choice of officers."

This language shows that, in the opinion of the court, section 147 of the Constiution was adopted for the express purpose of avoiding the effect of the decisions in the three cases above referred to, and relied upon by defendants.

Under this line of cases defendants insist that since the Legislature could have peremptorily fixed the county seat, or could have done so through the instrumentality of any agency it might have selected, such as a commission of three members, or of three hundred members, it had the right to submit it to all the voters, which was but a commission of all the people.

As above remarked, however, these cases were decided under the Constitution of 1850, which did not contain any prohibition at all similar to sections 147 and 148 of the present Constitution; and, that being true, the Legislature had a free hand. It is a well settled rule of constitutional construction that a State Legislature has all power that is not expressly denied to it, and that it may pass any law which is not forbidden by the State Constitution or by the Federal Constitution. Pannell v. Louisville Tobacco Warehouse Co., 113 Ky., 640.

In Cooley's Constitutional Limitations (7th Ed.), p. 241, the rule is announced as follows:

"It is to be borne in mind, however, that there is a broad difference between the Constitution of the United States and the Constitutions of the States as regards the powers which may be exercised under them. The government of the United States is one of *enumerated*

powers; the governments of the States are possessed of all the general powers of legislation. When a law of Congress is assailed as void, we look in the national Constitution to see if the grant of specified powers is broad enough to embrace it; but when a State law is attacked on the same ground, it is presumably valid in any case, and this presumption is a conclusive one, unless in the Constitution of the United States or of the State we are able to discover that it is prohibited. We look in the Constitution of the United States for *grants* of legislative power, but in the Constitution of the State to ascertain if any *limitations* have been imposed upon the complete power with which the legislative department of the State was vested in its creation. Congress can pass no laws but such as the Constitution authorizes either expressly or by clear implication; while the State Legislature has jurisdiction of all subjects on which its legislation is not prohibited.''

It is pointed out, however, by way of illustration and argument, that there is no provision regarding primary elections, which are, therefore, left to the pleasure of the Legislature, and that in pursuance of that power it has passed primary election laws, from time to time, without requiring the primary election to be held on the day of the general election. This view of the law was upheld in Montgomery v. Chelf, 118 Ky., 766, where it was held that a primary election is not an election within the meaning of either section 6 or section 148 of the Constitution. But this ruling was based upon the distinct ground that the Constitution nowhere made provision for holding primary elections; and, clearly they are not elections referred to by sections 147 and 148, which mean final elections, and not a preliminary choice of candidates by the respective political parties. Hodge v. Bryant, 149 Ky., 110, 148 S. W., 21, merely approved the doctrine of Montgomery v. Chelf.

Those two cases merely held that a primary election did not come within the constitutional definition of an election, since it was not an election of officers nor the decision of a question submitted to a vote of the people. It was merely the naming of candidates to be voted for at the election; and not coming within the prohibition of section 148, the Legislature was free to require a primary election to be held in August. If section 147 had enlarged the definition of the term ''election'' by embracing therein ''primary elections,'' along with the

choice of officers, and the decison of questions submitted to the voters, clearly a primary election could be held only in November. But it wholly failed to include primary elections in its definition, thus leaving them unaffected by section 148.

These decisions under the former Constitution throw little light upon the question before us, because the present Constitution is so radically different, in this respect, from the Constitution of 1850. We are, therefore, compelled to look at the question as a new one, and determinable only from the terms of the Constitution.

The language of section 148 *supra,* naturally suggests the inquiry as to what elections are otherwise provided for by the State Constitution. We find three kinds of elections only so provided for, to-wit: (1) section 61 of the Constitution provides that elections under the local option law may be held on a day other than the regular election days; (2) section 152 further provides that vacancies in the General Assembly may be filled at a special election; and (3), section 155 provides that section 148 shall not apply to the election of school trustees and other common school district elections, but that elections of that character are to be regulated by the General Assembly, except as otherwise provided in the Constitution.

The defendants contend, however, that section 148 does not apply to an election of this character, because it refers to an election in the ordinary sense in which officers are chosen; and that section 147 above quoted, giving the broader meaning to the term ''election'' is, by its terms, confined to the term as used in that section. In order to arrive at the full meaning of the term ''election'' as used in section 147, we must read the section as a whole. It is as follows:

''The General Assembly shall provide by law for the registration of all persons entitled to vote in cities and towns having a population of five thousand or more; and may provide by general law for the registration of other voters in the State. Where registration is required, only persons registered shall have the right to vote. The mode of registration shall be prescribed by the General Assembly. In all elections by persons in a representative capacity, the voting shall be *viva voce* and made a matter of record; but all elections by the people shall be by secret official ballot, furnished by public authority to the voters at the polls, and marked by

each voter in private at the polls, and then and there deposited. The word 'elections' in this section includes the decision of questions submitted to the voters, as well as the choice of officers by them. The first General Assembly held after the adoption of this Constitution shall pass all necessary laws to enforce this provision, and shall provide that persons illiterate, blind, or in any way disabled, may have their ballots marked as herein required.''

It will be noticed that the only clause in the section which contains the term "election" is the fourth clause or sentence, which reads:

"In all elections by persons in a representative capacity, the voting shall be *viva voce,* and made a matter of record; but all elections by the people shall be by secret official ballot, furnished by public authority to the voters at the polls, and marked by each voter in private at the polls, and then and there deposited.''

It must be conceded, under a fair interpretation of this clause, that the latter portion of it which applies only to elections by the people, is a general provision applicable to all elections by the people; and, that in applying the definition of the word "election" as given in the latter portion of the clause, it necessarily meant to apply that definition to all elections by the people held under the Constitution. The only elections referred to in section 147 are, first, elections by persons in a representative capacity, and secondly, elections by the people; and in the latter case the term "election" includes the decision of questions submitted to the voters, as well as the choice of officers by them. It will be noticed that section 147 does not provide for the election of any person or officer; on the contrary, it merely provides how all elections shall be conducted; not when they shall be held. Moreover, the term "election," in its constitutional sense, is used to designate a selection by the popular voice of a given district in contradistinction by appointment of a single person or officer. Speed v. Crawford, 3 Met., 207; Police Commissioners v. City of Louisville, 3 Bush, 597; City of Paducah v. Cally, 9 Bush, 323. Section 147 merely provides that in elections by persons voting in a representative capacity, the voting shall be *viva voce,* but in elections by the people the voting shall be by a secret official ballot furnished by public authority. So, in saying that "the word elections in this section includes the decision of questions submitted to

the voters," and that in elections by the people the voting shall be by secret ballot, it necessarily included elections generally, when held by the people, since to hold otherwise would' leave no character of elections by the people to which section 147 could be applied. I think it, therefore, clear beyond a doubt, that the decision of the question as to the location of the county seat of McCreary County, which was submitted to the voters of that county, was an election within the meaning of that term as used in section 148 of the Constitution; and, that when that section provided that "not more than one election each year shall be held in any county," it applied equally to the determination of the location of a county seat by a vote of the people, as well as to the choice of officers by them.

Plaintiffs cite Belknap v. City of Louisville, 99 Ky., 478, as sustaining their interpretation of section 148, *supra*. The election passed upon in the Belknap case was held under section 157 of the Constitution, which provides that no city "shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters thereof *voting at an election to be held for that purpose.*"

In Fidelity Trust & Safety Vault Co. v. Morganfield, 96 Ky., 564, it had theretofore been held that the submission of a bond issue for municipal purposes might be upon a different day from that of the general election; but in the Belknap case the Morganfield case was expressly overruled, the court holding that an election of that character must be held at the general election. It will be noticed that section 157, *supra,* merely provides for "*an election* to be held for that purpose." It does not specify that the question shall be voted upon at a regular election, or that it might not be voted upon at a special election. In other words, the court held that the word "election," not only embraced a submission of a question to the people for their determination, but that such an election must be held at the regular election. In the course of the opinion, the court said:

"In the section the word 'election' is used in the sense provided in section 147, and this provision indicates clearly that the word is used in section 148 to include questions submitted to the people, for otherwise there would be no need for the permission given by sec-

tion 61. By section 152 vacancies in the General Assembly may be filled at a special election.

"It seems clear that the provision of section 148, that no more than one election each year shall be held in this State or in any city, town, district or county thereof, except as otherwise provided in the Constitution, applies to questions submitted to the voters, and the only provision otherwise in the Constitution in reference to such questions is the one in regard to the submission of questions as to the sale of liquor. 　*　*　*

"There could be but one election in the year except in the cases specially provided for. This question was to be submitted to the people at that election. It was one election, though held for several purposes, and was in no sense a collection of elections held on the same day. One of the purposes of the election was to determine this question, which, under authority of the Constitution, the statute and the ordinance passed in accordance therewith was to be submitted to the voters of the city."

If the definition of the term "election" as given in section 147, applies to the term "election," as used in section 157, it is equally applicable to that term as used in section 148, although by the provision of section 147 the definition there given was confined to that section. In other words, the decision in the Belknap case supports the conclusion heretofore reached, that the definition given the term "election" by section 147, applies equally to the term "election" wherever it appears in the Constitution.

The prohibition of section 148 is sweeping; it is directed at elections of every kind. Its purpose was to lessen the number of elections which had become expensively burdensome, and distracting in their frequency. In making express provision for special elections in three excepted cases, it left the general prohibition applicable to all other elections; and, although the Legislature might have fixed the location of the county seat at either town, in the act creating the county, or might have left that question to a commission or other agency, nevertheless, when it submitted the question to an election by the people, the election could only be held under the terms of the Constitution, which is the supreme authority. The special election which fixed Whitley as the permanent county seat of McCreary County, having been held on September 7, 1912,

instead of in November, as required by section 148 of the Constitution, was void.

The order of injunction is reinstated in each case.